## DAVID SEARS, Jr., *vs.* EASTERN RAILROAD COMPANY.

Railroad corporations, by advertising the hours when trains will start, agree with holders of tickets that trains shall start at the hours named; but with an implied reservation of power to change the hours, upon giving reasonable notice.

.f the hours at which railroad trains will start have been advertised in public newspapers, it is not giving reasonable notice of a change of the hour of any particular train to post

up handbills announcing it at the stations and in the cars of the railroad corporation; and, if no other notice is given, one who has bought tickets, by the package, in advance, and in accordance with the advertisement has presented himself at the station to be carried before the appointed hour for a train to start, without knowledge of the change, may recover damages for the injury sustained by him from the delay. And, in such case, the railroad corporation cannot exonerate themselves by showing a usage on their part, for several years, to make occasional changes in the hours for certain trains to start, without other notice thereof than by handbills.

ACTION containing one count in contract and one in tort. Each count alleged that the defendants were common carriers of passengers between Boston and Lynn, and that on the 15th of September 1865, the plaintiff was a resident of Nahant, near Lynn, and the defendants before then publicly undertook and contracted with the public to run a train for the carriage of passengers from Boston to Lynn at nine and one half o'clock in the evening each week day, Wednesdays and Saturdays excepted; and the plaintiff, relying on said contract and undertaking, purchased of the defendants a ticket entitling him to carriage upon their cars between Boston and Lynn, and paid therefor twenty-five cents or thereabouts, and on a certain week day thereafter, neither Wednesday nor Saturday, namely, on the 15th of said September, presented himself on or before the hour of nine and a half o'clock in the evening at the defendants' station in Boston and offered and attempted to take the train undertaken to be run at that hour, as a passenger, but the defendants negligently and wilfully omitted to run the said train at that hour, or any train for Lynn till several hours thereafter; wherefore the plaintiff was compelled to hire a livery carriage and to ride therein to Lynn by night, and was much disturbed and inconvenienced.

The following facts were agreed in the superior court: The defendants were common carriers, as alleged, and inserted in the Boston Daily Advertiser, Post and Courier, from the 15th day of August till the 15th day of September an advertisement announcing the hours at which trains would leave Boston for various places, and among others that a train would leave for Lynn at 9.30 P. M. except Wednesdays, when it would leave at 11.15, and Saturdays, when it would leave at 10.30.

The plaintiff, a resident of Nahant, consulted one of the

above papers, about the 9th of September 1865, for the purpose of ascertaining the time when the latest night train would start from Boston for Lynn on the 15th, in order to take the train on that day, and saw the advertisement referred to. On the 15th, which was on Friday, he came to Boston from Lynn in a forenoon train, and in the evening shortly after nine o'clock presented himself at the defendants' station in Boston for the purpose of taking the 9.30 train for Lynn, having with him a ticket which previously to September 9th he had purchased in a package of five. This ticket specified no particular train, but purported to be good for one passage in the cars between Boston and Lynn during the year 1865. He learned that this train had been postponed to 11.15, on account of an exhibition, and thereupon hired a buggy and drove to Lynn, arriving there soon after 10.30. He had seen no notice of any postponement of this train. He once in 1864 observed a notice of postponement, and heard that the defendants sometimes postponed their late trains.

For several years before 1865, the defendants' superintendent had been accustomed occasionally to postpone this train, as often as from once to three times a month, for the purpose of allowing the public to attend places of amusement and instruction, and also upon holidays and other public occasions in Boston; giving notice thereof by handbills posted in the defendants' cars and stations. On the 13th of September 1865, in pursuance of this custom, he decided to postpone this train for September 15th till 11.15, and on the same day caused notice thereof to be printed and posted in the usual manner. The train was so postponed, and left Boston at 11.15, arriving at Lynn at 11.45.

The defendants offered to prove, if competent, that this usage of detaining the train was generally known to the people using the Eastern Railroad, and that the number of persons generally going by the postponed train was larger than generally went by the 9.30 train, and was larger on the evening in question; but at the station in Boston there were persons complaining of the postponement of the train, and leaving the station.

It was agreed that, if on these facts the plaintiff was entitled to recover, judgment should be entered in his favor for ten dollars, without costs. Judgment was rendered for the defendants, and the plaintiff appealed to this court.

*J. L. Stackpole,* for the plaintiff.

*C. P. Judd,* for the defendants. If the plaintiff can maintain any action, it must be upon the count in contract. There was no proof of deceit. *Tryon* v. *Whitmarsh,* 1 Met. 1. What then was the nature of the contract between the parties? The ticket merely secured one passage at any time in 1865. This was a contract to carry the plaintiff in the usual way of transporting passengers. It was usual to postpone this train, in order to give the public greater accommodations. The plaintiff was bound by this usage, whether he knew it or not. If he neglected to inquire as to the custom, it is his own fault. *Van Santvoord* v. *St. John,* 6 Hill, 160. *Cheney* v. *Boston & Maine Railroad,* 11 Met. 121. *Clark* v. *Baker,* Ib. 186. *City Bank* v. *Cutter,* 3 Pick. 414. *Ouimit* v. *Henshaw,* 35 Verm. 616, 622. If the advertisement was an offer to carry passengers at 9.30, this offer was withdrawn on the 13th by due notice. *M'Culloch* v. *Eagle Ins. Co.* 1 Pick. 278. *Boston & Maine Railroad* v. *Bartlett,* 3 Cush. 227. The acquiescence in the usage of the defendants by the public for years shows that the notice was sufficient. The plaintiff should have made further inquiry. *Booth* v. *Barnum,* 9 Conn. 290. *Taylor* v. *Stibbert,* 2 Ves. Jr. 437. *Taylor* v. *Baker,* 5 Price, 306.

CHAPMAN, J. If this action can be maintained, it must be fo. the breach of the contract which the defendants made with the plaintiff. He had purchased a package of tickets entitling him to a passage in their cars for each ticket from Boston to Lynn. This constituted a contract between the parties. *Cheney* v. *Boston & Fall River Railroad,* 11 Met. 121. *Boston & Lowell Railroad* v. *Proctor,* 1 Allen, 267. *Najac* v. *Boston & Lowell Railroad,* 7 Allen, 329. The principal question in this case is, what are the terms of the contract? The ticket does not express all of them. A public advertisement of the times when their trains run enters into the contract, and forms a part of it.

*Denton* v. *Great Northern Railway*, 5 El. & Bl. 860. It is an offer which, when once publicly made, becomes binding, if accepted before it is retracted. *Boston & Maine Railroad* v. *Bartlett*, 3 Cush. 227. Advertisements offering rewards are illustrations of this method of making contracts. But it would be unreasonable to hold that advertisements as to the time of running trains, when once made, are irrevocable. Railroad corporations find it necessary to vary the time of running their trains, and they have a right, under reasonable limitations, to make this variation, even as against those who have purchased tickets. This reserved right enters into the contract, and forms a part of it. The defendants had such a right in this case.

But if the time is varied, and the train fails to go at the appointed time, for the mere convenience of the company or a portion of their expected passengers, a person who presents himself at the advertised hour, and demands a passage, is not bound by the change unless he has had reasonable notice of it. The defendants acted upon this view of their duty, and gave certain notices. Their trains had been advertised to go from Boston to Lynn at 9.30 P. M., and the plaintiff presented himself, with his ticket, at the station to take the train; but was there informed that it was postponed to 11.15. The postponement had been made for the accommodation of passengers who desired to remain in Boston to attend places of amusement. Certain notices of the change had been given; but none of them had reached the plaintiff. They were printed handbills posted up in the cars and stations on the day of the change, and also a day or two before. Though he rode in one of the morning cars from Lynn to Boston, he did not see the notice, and no legal presumption of notice to him arises from the fact of its being posted up. *Brown* v. *Eastern Railroad*, 11 Cush. 101. *Malone* v. *Boston & Worcester Railroad*, 12 Gray, 388. The defendants published daily advertisements of their regular trains in the Boston Daily Advertiser, Post and Courier, and the plaintiff had obtained his information as to the time of running from one of these papers. If they had published a notice of the change in these papers, we think he would have been bound by it. For

as they had a right to make changes, he would be bound to take reasonable pains to inform himself whether or not a change was made. So if in their advertisement they had reserved the right to make occasional changes in the time of running a particular train, he would have been bound by the reservation. It would have bound all passengers who obtained their knowledge of the time-tables from either of these sources. But it would be contrary to the elementary law of contracts to hold that persons who relied upon the advertisements in either of those papers should be bound by a reservation of the offer, which was, without their knowledge, posted up in the cars and stations. If the defendants wished to free themselves from their obligations to the whole public to run a train as advertised, they should publish notice of the change as extensively as they published notice of the regular trains. And as to the plaintiff, he was not bound by a notice published in the cars and stations which he did not see. If it had been published in the newspapers above mentioned, where his information had in fact been obtained, and he had neglected to look for it, the fault would have been his own.

The evidence as to the former usage of the defendants to make occasional changes was immaterial, because the advertisement was an express stipulation which superseded all customs that were inconsistent with it. An express contract cannot be controlled or varied by usage. *Ware* v. *Hayward Rubber Co.* 3 Allen, 84.

The court are of opinion that the defendants, by failing to give such notice of the change made by them in the time of running their train on the evening referred to as the plaintiff was entitled to receive, violated their contract with him, and are liable in this action. *Judgment for the plaintiff.*